**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| AMLIN CORPORATE MEMBER, LTD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2695 |
| | § | |
| | § | |
| LOGISTICS GROUP INTERNATIONAL, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Marubeni Plaint Contractor, Inc. ("MPCI"), has moved for an award of its attorney's fees and costs, (Docket Entry No. 80), and for disbursement of the funds in the court's registry, (Docket Entry No. 82). Logistics Group International, Inc. opposes these requests. (Docket Entry No. 85). Based on the record, the motions and response, and the relevant law, this court grants the motion for fees and costs and directs Logistics Group to pay MPCI $85,275.00 in fees and $1,332.67 in costs. MPCI's motion for disbursement of funds in the registry is granted.

The reasons for these rulings are explained in detail below.

## I.    Background

The factual and procedural background of this case is described in earlier opinions. Briefly, MPCI was hired to oversee the shipment of the machine at issue from the United States to Mexico. MPCI hired another company to ship the machine. This other company in turn hired Logistics Group to handle the shipment within Mexico. The machine was destroyed while in Logistics Group's possession. Logistics Group had insured the machine, as it was contractually required to

do.  The insurer, Amlin Corporate Member, Ltd., filed this interpleader action to because it received conflicting demands for the insurance proceeds.  (Docket Entry No. 1).  This court granted Amlin's motion for its fees and discharged Amlin from the case.  (Docket Entry No. 56).

MPCI obtained by assignment the claims arising from the contract between Logistics Group and the machine's owner.  MPCI added a claim for breach of contract against Logistics Group.  (Docket Entry No. 28).  MPCI and Logistics Group filed cross-motions for summary judgment.  This court granted MPCI's motion, finding that it was entitled to the insurance funds placed in the court's registry, reduced by the attorney's fees awarded to the insurer, and to an additional amount based on Logistics Group's breach of contract, for a total of $309,515.00.  MPCI's motion for summary judgment included a request for $90,103.45 in attorney's fees and costs.  Because Logistics Group did not oppose this part of the motion, this court granted it and entered final judgment including fees and costs.  (Docket Entry Nos. 74, 75).

Logistics Group moved for reconsideration of the summary judgment and a stay of enforcement pending a ruling on that motion.  Logistics Group challenged the amount of fees and costs awarded.  (Docket Entry Nos. 77, 78).  MPCI responded that the motion for reconsideration was unwarranted and opposed a stay, but conceded that some of the fees and costs it sought were not compensable.  (Docket Entry Nos. 79, 81).  MPCI requested additional fees for responding to the motion for reconsideration and conditional fees if Logistics Group appealed to the Fifth Circuit or Supreme Court.  (Docket Entry No. 80).  MPCI also asked this court to order the Clerk of Court to disburse the $293,298.31 in the court's registry toward the final judgment.  (Docket Entry No. 82).

This court denied Logistics Group's motion for reconsideration and denied the motion to stay enforcement of the judgment as moot.  This court noted MPCI's concession that some of the fees

and costs it sought were not compensable but declined to rule on the precise amount of fees and costs to be awarded because the deadline for Logistics Group's response had not arrived. (Docket Entry No. 83). This court entered an amended final judgment, which, unlike the first, did not address fees and costs. (Docket Entry No. 84).

The parties' arguments on the remaining fee, cost, and disbursement issues are analyzed below.

## II.     The Motion for Attorney's Fees and Costs

### A.     Jurisdiction

Logistics Group has filed a notice of appeal of the amended final judgment. (Docket Entry No. 86). District courts generally lose jurisdiction over a case after a notice of appeal is filed, but a "district court has jurisdiction to rule on a motion for ancillary attorney's fees even after the filing of a notice of appeal with respect to the underlying claims." *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816–17 (5th Cir. 1997); *see also Kira, Inc. v. All Star Maint.*, 294 F. App'x 139, 141 (5th Cir. 2008) (per curiam) (unpublished).

### B.     Costs

MPCI voluntarily reduced its original cost request to $1,332.67. Logistics Group does not dispute this amount. This part of the motion is granted.

### C.     MPCI's Attorney's Fee Request

MPCI relies on the affidavit of its primary attorney, Raj Duvvuri, to support its fee request.[1] MPCI seeks the following fees for its attorneys' prejudgment work:

---

[1] MPCI relied on Duvvuri's affidavits for previous fee requests. (Docket Entry No. 53, Ex. 24; Docket Entry No. 48, Ex. 4).

| Timekeeper | Position | Hours | Hourly Rate | Total Fee |
|---|---|---|---|---|
| Christina Bryan | Partner | 1.5 | $350 | $525 |
| Raj Duvvuri | Associate | 337.9 | $242[2] | $81,800 |
| Steve Roth | Paralegal | 35.6 | $160 | $5,696 |
| Sandra Ziebell | Paralegal | 8.6 | $180 | $1,548 |
| Total | | 383.6 | | $89,569 |

(Docket Entry No. 79, Ex. 3).  Duvvuri states in his affidavit that "a sample of the tasks giving rise to the attorney fees includes drafting pleadings, response to motions to dismiss, summary judgment briefs and other filings; drafting initial disclosures, discovery requests, and written discovery responses; gathering and serving relevant documents from the client and reviewing the documents produced in the case; conducting legal research; developing legal strategy and communicating with the client; participating in conferences and drafting correspondence with opposing counsel; deposing [Logistics Group's] representative and defending the deposition of MPCI's representative; and interviewing and securing declarations from witnesses." (*Id.*).  Duvvuri's affidavit does not state how much time these tasks required or who performed them.  Duvvuri states that MPCI incurred approximately $4,000.00 of prejudgment attorney's fees related to the claims on which it prevailed, for which it does not seek compensation.  Duvvuri also states that MPCI incurred $1,575 in fees relating to its Carmack Amendment and negligent bailment claims, which it concedes are not recoverable.

MPCI also requests postjudgment attorney's fees for additional time incurred responding to Logistic Group's motion to reconsider and to stay, its motion for fees, and its motion to disburse

[2]  Duvvuri's rate represents a blended rate based on the change in his billing rate.  The $242 rate is based on the total fee request for Duvvuri's time divided by the number of hours claimed.

4

funds.  That additional time is set out in the following chart:

| Timekeeper | Position | Hours | Hourly Rate | Total Fee |
|---|---|---|---|---|
| Raj Duvvuri | Associate | 46.1 | $250 | $11,525 |

Finally, MPCI requests conditional attorney's fees for appeal.  It seeks $40,000 if Logistics Group unsuccessfully appeals to the Fifth Circuit, $25,000 more if Logistics appeals to the Supreme Court, and $40,000 if the Supreme Court grants *certiorari* and MPCI ultimately prevails.

**D.     The Legal Standard**

Under the "American Rule," parties must ordinarily bear their own attorney's fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975)).  "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law does not allow the recovery of attorney's fees except by statute or by contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006).  MPCI does not contend that the terms of any contract provide for attorney's fees.  By statute, MPCI  may recover reasonable attorney's fees incurred in a successful breach of contract claim.  TEX. CIV. PRAC. & REM. CODE § 38.001(8).  A court must award reasonable attorney's fees and costs if there is proof that the request is reasonable and the plaintiff has been awarded damages. *Mathis*, 302 F.3d at 462 (citing TEX. CIV. PRAC. & REM. CODE § 38.001(8)).  MPCI bears the burden of proving the reasonableness of the fees it seeks and of providing sufficient documentation to support the award. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (U.S. 1983)) (additional citations omitted).

Texas courts use the lodestar method for calculating attorney's fees. *Toshiba Mach. Co., Am.*

5

*v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard.  This standard is substantially similar under both federal law and state law.").  The first step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case.  The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The second step is to determine the number of hours "reasonably expended" by the attorneys. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).  The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. *Id.*

Once the lodestar is determined, a court must determine whether to increase or decrease the amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).  The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19.  Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op, Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).

### D.    The Lodestar Calculation

#### 1.    The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate.  The prevailing market rate for similar services by lawyers with similar training and experience in the relevant legal community is the established basis for determining a reasonable hourly rate.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate.  *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).  To establish the reasonableness of the requested rate, counsel "must produce satisfactory evidence — in addition to [his] own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Deltatech Constr., LLC v. Sherwin-Williams Co.*, No. Civ. A.04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005) (quoting *Blum*, 465 U.S. at 896 n.11); *see also Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ("The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits").  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services.  *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).

The parties dispute the reasonable hourly rate for Duvvuri.  MPCI asserts that it is approximately $250 per hour, relying on Duvvuri's affidavit.  Duvvuri graduated from the Harvard Law School and clerked for a federal district court judge.  He has five years of experience working

at Houston law firms.  In his affidavit, Duvvuri states that based on his knowledge of other attorneys' rates in the area, "$250 per hour for a senior associate from a top law school at a top firm" is "equal to or better than the prevailing rates in this area for such personnel."  (Docket Entry No. 79, Ex. 3, ¶ 14).

Logistics Group responds that $250 is too high an hourly rate for an attorney with five years of experience and asserts that a reasonable rate would be between $184 to $205 per hour.  Logistics Group relies on the affidavit of its own attorney, Donovan Hutchins, asserting that $300 is a reasonable rate for an attorney with over 20 years' experience in an insurance and contract dispute. (Docket Entry No. 85-1).  Logistics Group also attaches the 2009 Hourly Fact Sheet produced by the State Bar of Texas.  Many courts have used this survey in determining a reasonable hourly rate. *E.g.*, *Merrick v. Scott*, Civ. A. No. 3:10-CV-2172-D, 2011 WL 1938188, at *9 (N.D. Tex. May 20, 2011); *Compass Bank v. Villarreal*, Civ. A. No. L-10-8, 2011 WL 1740270, at *16 (S.D. Tex. May 5, 2011); *Kinnison v. City of San Antonio*, Civ. A. No. 08-CV-421-XR, 2011 WL 1399094, at *4 (W.D. Tex. Apr. 12, 2011).  The survey indicates median hourly rates of $194 for insurance disputes and $245 for commercial litigation in the Houston area.  (Docket Entry No. 85-2, at 8–9). The median hourly rate for a Houston attorney with three to six years of experience is $230.  (*Id.* at 11).

Based on the record and the parties' arguments, this court determines that a reasonable rate for Duvvuri's time is $250.  This is slightly above the median rate for attorneys in Houston with similar years of experience.  The added amounts reflects the value of Duvvuri's education, his clerkship experience, and the quality of his prior practice, as described in his affidavit.  It also reflects the fact that this case was not merely an insurance dispute but also raised issues more similar

to those encountered in commercial litigation, which are generally paid at a median hourly rate of $245. Because, as explained below, the record does not support finding any hours reasonably expended by Bryan, Roth, and Ziebell, there is no need to address their reasonable hourly rates.

### 2.     The Number of Hours Reasonably Expended

The second step in the lodestar is determining the number of hours reasonably expended. Logistics Group argues that the fee request is not sufficiently precise to allow this court to determine whether the hours claimed were reasonably expended. Logistics Group urges this court to reject or sharply reduce MPCI's claimed hours. A court must have sufficient information to determine whether "particular hours claimed were reasonably expended on the litigation." *Kellstrom*, 50 F.3d at 325 (quoting *Alberti v. Kelvenhgen*, 596 F.2d 927, 933 (5th Cir.), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990)) (internal quotation marks omitted). "[T]he documentation must be sufficient for the court to verify that the applicant has met its burden." *Id.* at 324. ""Failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Id.* at 323–35 (citing *Heasley v. Comm'r*, 967 F.2d 116, 123 (5th Cir. 1992)); *Broyles v. Texas*, Civ. A. No. H-08-02320, at *12 (July 23, 2009). A court has discretion to reduce the number of hours credited if documentation is "vague, lacking, or incomplete." *Pelt v. U.S. Bank Trust Nat'l Ass'n*, 259 F. Supp. 2d 541, 543 (N.D. Tex. 2003); *see also Kellstrom*, 50 F.3d at 327 ("Litigants take their chances when submitting . . . fee applications . . . provid[ing] little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision.'"). Attorneys need not, however, "'writ[e] a book' to describe in excruciating detail the professional services rendered for each hour or fraction

9

of an hour" to merit a fee award. *Kellstrom*, 40 F.3d at 327. The district court should rely on its familiarity with the case to determine whether to reduce the fee award and the extent of such a reduction. *Id.* at 326–27 (deferring to the "district court's familiarity with this case" even though the submissions "bordered on inadequacy as a matter of law"). A district court abuses its discretion by refusing to reduce the number of hours claimed when the documentation is insufficient to determine the amount of hours reasonably expended. *Id.* at 325; *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987).

In *Kellstrom*, the attorneys submitted narratives with general descriptions of the legal work performed. One request read, in part:

> We traveled to New York and deposed defendants Comstock and LKC, Inc. We reviewed extensive documentation concerning Fischbach & Moore's bids to LP & L and we deposed Fischbach & Moore in Kenner, Louisiana. We deposed Lord Electric Company in New York City; we traveled to Lincoln Nebraska and deposed Commonwealth Electric Company. We reviewed transcripts of all these depositions when produced.

*Kellstrom*, 50 F.3d at 325 n.9. The Fifth Circuit concluded that the records "do not provide this court with sufficient information to determine whether all of the amounts requested were reasonably expended on this litigation." *Id.* at 325. But the court found that the "documentation supports an award of *some* amount of hours." *Id.* (emphasis in original).[3] Exercising its discretion determine the fee on appeal, the court found that a 10 percent reduction for the insufficient records was appropriate. *Id.* at 326; *see also Leroy*, 831 F.2d at 586 n.16 (applying a 15 percent reduction for

---

[3] *See also Tyler v. Cedar Hill Indep. Sch. Dist.*, No. 10-11022, 2011 WL 2893014, at *1 (5th Cir. July 20, 2011) (per curiam) (unpublished) (noting that Fifth Circuit precedent supports awarding fees based on "'sparse' documentation (such as that describing the hours expended and the rates charged)"); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822–23 (5th Cir. 1997) (affirming an award based on "sparse" documentation in light of "the district court's familiarity with the legal work . . . as well as our deferential standing of review" despite the "glaring holes in [the claimant's] documentation").

similar reasons).

The narrative provided in the Duvvuri affidavit similar to that in *Kellstrom*.  But this court is familiar with the case, including the motions and responses, the issues raised, and the legal work. In resisting liability, Logistics Group raised numerous challenges to MPCI's claims, taking a shotgun approach.  The challenges included questioning the ownership of the damaged cargo, the validity of the contractual assignments, and the validity of the contract.  Logistics Group also challenged 55 of MPCI's 58 summary-judgment exhibits.  Logistics Group's decision to raise many arguments meant that the other side had to respond to many arguments, including to those that were legally weak, factually unsupported, or both.

MPCI's summary judgment filings were thorough and careful.  They reflect significant time spent reviewing the record, investigating legal theories, and responding to the numerous issues Logistics Groups raised.  MPCI's postjudgment filings reflect the same thorough approach. Logistics Group raised several challenges to this court's grant of summary judgment, requiring MPCI to respond.  After failing to respond to MPCI's initial request for attorney's fees and costs, Logistics Group then opposed it.  This opposition required an additional response by MPCI's counsel.  The record also reflects multiple depositions and a significant number of documents that required review.  This court cannot take the affidavit's assertion of hours at "face value," *Alberti*, 896 F.2d at 931.  But this court can rely on what the record reveals about the litigation and the number and nature of the issues raised in evaluating the reasonableness of the number of hours expended.  Similar to *Kellstrom*, the absence of detailed records at most supports a slight overall reduction.

Logistics Group contends that the amount of hours claimed reflects overpreparation.

11

*Cordova v. Sw. Bell Yellow Pages*, 148 S.W.3d 441, 449 (Tex. App.—El Paso 2004, no pet.)("If the prevailing party has overprepared the case, then the party liable for attorney's fees should not be held responsible for the time spent in overpreparation."). MPCI's approach to the case was thorough, but that is different from overpreparation. The amount of work MPCI expended was largely due to Logistics Group's strategy of raising so many challenges and issues, including many that lacked substance or merit but nonetheless required MPCI to respond. For example, Logistics Group challenged 55 of MPCI's summary judgment exhibits. Many of these challenges were unsuccessful and for good reasons. MPCI's response, to create a table detailing the admissibility of each exhibit, (Docket Entry No. 58, Ex. 5), was not excessive or unreasonable.

Logistics Group was, of course, entitled to litigate the case vigorously. But given the many issues and challenges it raised, its protest that MPCI overprepared by filing thorough responses to each of these issues and challenges is unpersuasive. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (plurality opinion) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980))); *Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-M, 2009 WL 614823, at *3 (N.D. Tex. Mar. 10, 2009); *Camargo v. Trammell Crow Interest Co.*, 318 F. Supp. 2d 448, 451 (E.D. Tex. 2004) (noting that the defendant "strenuously contested" the plaintiff's position as a factor justifying the amount of hours claimed).

The cases on which Logistics Group relies involved a disproportionate amount of legal work on simple cases of relatively low value. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) (rejecting $500,000 in fees "for what was—or at least should have been—a simple coverage dispute" about indemnification for a $435,000 negligence claim); *Republic Nat'l*

*Life Ins. Co. v. Heyward*, 568 S.W.2d 879, 887 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.) (holding that attorneys who "worked between 750 and 1,000 hours on [a] $12,000 [contract] lawsuit . . . overproduced and defendant should not be held liable for such overproduction"). In this case, by contrast, it was Logistics Group's own approach and work that made the case as complicated as it was and required MPCI to spend so much attorney time. As a result, MPCI's work was not disproportionate given the challenges and issues Logistics Group raised and given the nature of the case.

Nor does the value of the case require a reduction of the fees MPCI seeks. Under Texas law, fee awards must "bear some reasonable relationship to the amount in controversy." *Cordova*, 148 S.W.3d at 448; *see also USAA Cnty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 103 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Interpreting Texas law, federal courts have held that "disproportion alone does not render the award of attorney's fees excessive." *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 355 (5th Cir. 2001) (affirming $712,000 in attorney's fees on a recovery of $74,570 in actual damages on various state statutory and common law claims); *see also Quanta Servs. Inc. v. Am. Admin. Grp. Inc.*, No. 08-20252, 2008 WL 5068804, at *5 (5th Cir. Dec. 2, 2008) (per curiam) (unpublished) (summary calendar) (affirming $116,767.68 in attorney's fees for $100,000 damages award obtained in a contract suit). The cases on which Logistics Group relies each involved significantly a higher fee-to-recovery ratio than is present here. *Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671, 684–85 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (affirming $52,000 in fees on a $8,276 judgment); *USAA Cnty. Mut. Ins. Co.*, 241 S.W.3d at 102–03 (affirming $52,310 in fees on a $2,000 insurance claim); *Cordova*, 148 S.W.3d at 448–49 (affirming $20,885 in fees on at $7,092 contract recovery); *Sibley v. RMA Partners, L.P.*, 138

13

S.W.3d 455, 459 (Tex. App.—Beaumont 2004, no pet.) (affirming $82,748 in fees on a $43,000 recovery).  The amount of the fee request in relation to the value of the case does not warrant adjustment.

Logistics Group argues that the fee request must be reduced because MPCI did not segregate hours that are not compensable.  Logistics Group contends that MPCI cannot recover fees incurred solely as a result of the interpleader action Amlin filed, such as fees for contesting Amlin's claim for its fees for filing the interpleader action.  Under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Chapa*, 212 S.W.3d at 313–14; *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007).  It is not enough that the claims arise out of the same facts. *Chapa*, 212 S.W.3d at 313–14.  "[O]nly when discrete legal services advance both a recoverable and unrecoverable claim" may a claimant recover fees related to an unrecoverable claim.  *Id.*  In *Chapa*, for example, the plaintiff could recover attorney's fees for time spent advancing a contract and DTPA claim, but not for time spent advancing a fraud claim.  The Texas Supreme Court noted that "many if not most legal fees in [cases involving the same underlying facts] cannot and need not be precisely allocated to one claim or the other.  Many of the services involved in preparing a contract or DTPA claim for trial must still be incurred if tort claims are appended to it; adding the latter does not render the former services unrecoverable."  *Id.* at 313.  The court made clear, however, that when the plaintiff's "attorneys were drafting her pleadings or the jury charge relating to fraud, there is no question that those fees were not recoverable."  *Id.*

"Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Chapa*, 212 S.W.3d at 314.  MPCI's counsel's work related to the interpleader

14

procedure, as opposed to the substantive contract claims, appears to have been minor.  MPCI requested extensions of time to respond to the interpleader complaint, (Docket Entry Nos. 7, 14, 19, 21), and filed a three-page response challenging Amlin's fee request.  MPCI's fee request is reduced by five hours to reflect this work, which is not properly included in the fee award.  *See Tyler*, 2011 WL 2893014, at *2 (holding that the district court did not err by refusing to allow resubmission of a deficient hours claim) (citing *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 252 (5th Cir. 2002)). No further adjustment is appropriate.

Logistics Group next challenges the hours billed for Bryan and for the two legal assistants, Roth and Ziebell.  Duvvuri asserts that Bryan spent 1.5 hours on the case.  There is, however, no information in the record showing what work she did in that time.  Given the absence of this information, it is inappropriate to award fees for the time.  *Kellstrom*, 50 F.3d at 319 (denying an attorney's fees on a record "virtually devoid of any information helpful to a determination of whether or how his hours were spent beneficially on this litigation").[4]  A similar problem exists as to the 44.2 hours of legal assistant time for which MPCI seeks fees.  Time spent by legal assistants is compensable if the claimant establishes: (1) that the legal assistant is qualified through education, training or work experience to perform substantive legal work; (2) that substantive legal work was performed under the direction and supervision of an attorney; (3) the nature of the legal work which was performed; (4) the hourly rate being charged for the legal assistant; and (5) the number of hours expended by the legal assistant.  *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, pet. denied); *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.—Houston

---

[4]  There is also no information in the record from which this court could determine a reasonable fee.  The only fact in the record about Bryan is that she is a partner.

[14th Dist.] 1992, writ denied); *Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 702 (Tex. App.—Dallas 1988, writ denied); *see also Giddy Up, LLC v. Prism Graphics, Inc.*, Civ. A. No. 3:06-CV-0948-B, at *7 (N.D. Tex. Mar. 12, 2008).  The Duvvuri affidavit sets out no information about the first three factors.  MPCI cannot recover fees for the legal assistants' work.  *See All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.) (excluding legal assistant fees where there was no evidence other than the hourly rate and hours expended); *Clary Corp.*, 949 S.W.2d at 469–70 (denying fee request for document review by legal assistant when there was no evidence of the legal assistant's qualifications and no billing statements detailing the work performed because the evidence was "legally insufficient"); *Moody*, 828 S.W.2d at 248 (denying attorney's fees for legal assistant work when evidence did not establish the qualifications, work performed, hourly rate, and hours worked).

Logistics Group's argument for a reduction to reflect the absence of billing judgment is unpersuasive.  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  Fee applicants bear the burden of establishing the appropriate hours and hourly rates and that they exercised billing judgment.  *Id.* at 800.  The fee applicant should show the hours that have been written off.  "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment."  *Id.* at 799; *see also Walker*, 313 F.3d at 251; *Mullins v. TestAmerica*, No. 3:02-cv-0106, 2008 WL 4526182, at *10 (N.D. Tex. Oct. 8, 2008) (deducting 15 percent from the fee award because the fee applicant claimed to have exercised billing judgment but did not show how many hours had been written off from the time entries submitted, and because

there were other errors and inconsistencies in the time entries); *Heliflight, Inc. v. Bell/Agusta Aerospace Co.*, No. 4:06-cv-425, 2007 WL 4373259, at *4, 8 (N.D. Tex. Dec. 12, 2007) (reducing fee award by 20 percent for various reasons, including the plaintiff's failure to show the total amount of time that had been written off).  Logistics Group concedes that MPCI reduced its bill by $4,000, but contends that further reduction is required because the affidavit does not state that the hours written off were unproductive, excessive, or redundant.  Logistics Group does not explain why such a statement is necessary, given that MPCI has not included the hours at issue in the time for which the fee award is sought. The fact that MPCI has reduced its requested fee award by $4,000 hours clearly shows billing judgment.  The statement Logistics Group faults MPCI for omitting would not reveal whether billing judgment was sufficiently used.   The 10 percent reduction adequately addresses Logistics Group's challenge to the absence of information about how MPCI exercised billing judgment.

Finally, Logistics Group argues that billing 41.6 hours for postjudgment work is excessive. According to the Duvvuri affidavit, that time includes responses to Logistics Group's motion for reconsideration and motion to stay and drafting the motions to disburse funds and for additional attorney's fees.  Again, the nature and the number of Logistics Group's postjudgment challenges and issues provide significant support for finding the number of hours MPCI spent in responding reasonable.  The absence of detailed information supporting the fee request is appropriately taken into account by a 10 percent reduction of the fees sought.  No additional reduction is appropriate.

### E.    Adjustments to the Lodestar

No adjustments to the lodestar are appropriate based on the record.

### F.    The Fee Amount

17

The above analysis removes from the fee award the hours expended by one attorney and two legal assistants, leaving the 384 hours billed by Duvvuri. The total is reduced by 5 hours for the time spent working on Amlin's interpleader action, leaving 379 hours. The hours are reduced by 10 percent, to 341.1hours. Multiplying 341.1 hours by the approved hourly rate of $250 per hour yields a fee of $85,275.00.

### G.    Conditional Attorney's Fees for Appeal

MPCI requests conditional attorney's fees for appeal. It seeks $40,000 if Logistics Group unsuccessfully appeals to the Fifth Circuit, $25,000 more if Logistics appeals to the Supreme Court, and $40,000 if the Supreme Court grants *certiorari* and MPCI ultimately prevails. Logistics Group argues that the evidence is insufficient to support a conditional award of attorney's fees.

An award of attorney's fees may include conditional fees for an appeal. *Solomon v. Steitler*, 312 S.W.3d 46, 59 (Tex. App.—Texarkana 2010, no pet.); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.], 2006, no pet.); *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 400 (Tex. App.—Dallas 2000, pet. denied). As with fees awarded for work during a trial, "there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees." *Keith*, 221 S.W.3d at 169. Duvvuri's affidavit requests dollar figures for fees in case of appeal, but it does not specify a number of hours or otherwise provide a basis for the amounts requested. The request for appellate attorney's fees is denied without prejudice to request additional fees if MPCI succeeds on appeal. *Fid. & Deposit Co. of Md. v. Rodriguez*, Civ. A. No. 3:09-CV-76-KC, 2009 WL 2382979, at *5 (W.D. Tex. June 10, 2009) (denying a "speculative" award of appellate attorney's fees before the party had incurred the fees without prejudice to refiling after a successful appeal); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, No. Civ. A. 5:02-CV-101-

C, 2003 WL 21662829, at *6–7 (N.D. Tex. July 15, 2003) (declining to award fees for an appeal before the services were rendered and noting that the Fifth Circuit could provide fees on appeal if appropriate (citing *Heasley*, 867 F.2d at 125)), *rev'd in part on other grounds*, 382 F.3d 546 (5th Cir. 2003).

### III.    The Motion to Direct Disbursement of the Funds in the Registry

In response to Logistics Group's motion for reconsideration, MPCI moved for an order to the Clerk of Court to disburse the insurance proceeds deposited in the court's registry.  A party may ordinarily execute a judgment 14 days after judgment is entered.   *See* FED. R. CIV. P. 62(a) (automatically staying enforcement of most judgments for 14 days).  That period has now passed and is not a basis for continued retention of the funds.

Logistics Group argues that this court should not disburse the funds because they  provide security in the event it prevails on appeal.  This argument is similar to a motion for a stay of execution of a judgment under Rule 62(d), which applies after a court approves a supersedeas bond. *See Halliburton Energy Servs., Inc. v. NL Indus.*, Civ. A. No. H-05-4160, 2008 WL 2787247, at *1 (S.D. Tex. July 16, 2008).  According to the Fifth Circuit,

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979) (summary calendar).  The bond generally must cover "the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay."  *Id.* at 1191.  The

judgment debtor has the burden of demonstrating the adequacy of an alternative form of security. *Id.* Courts have allowed registry funds to substitute for a supersedeas bond if the funds are adequate. *Prudential Ins. Co. of Am. v. Kamrath*, No. 4:03-CV-1736 CEJ, 2006 WL 3498397, at *1–2 (E.D. Mo. Dec. 4, 2006); *AT & T Commc'ns of Calif., Inc. v. Pac-West Telecomm, Inc.*, No. C. 06-07271 JSW, 2008 WL 4298220, at *2 (N.D. Cal. Sept. 19, 2008); *cf. First Fin. Bank v. CS Assets, LLC*, Civ. A. No. 08-0731-WS-M, 2010 WL 3119077, at *3–4 (S.D. Ala. Aug. 6, 2010) (rejecting a request to forego a bond because the interest on the registry funds would not adequately compensate for the money the plaintiff bank could earn by lending it immediately). Logistics Group has neither demonstrated that the funds in the court's registry are adequate security for the judgment, nor moved to stay the judgment. The motion to disburse funds from the registry is granted.

## IV.    Conclusion

The motion for attorney's fees and costs is granted. Logistics Group must pay MPCI $85,275.00 in attorney's fees and $1,332.67 in costs. The motion to disburse funds is granted.

SIGNED on July 28, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge